<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| MA'DEQ D. YAZID-MAZIN, | : | Civil Action No. 03-4997(KSH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM F. LAMB, NICOLE A. RAO, | : | **OPINION** |
| MANUEL B. SAMEIRO, SIMON L. | : | |
| ROSENBACH,  JAMES BENANTI, SGT. | : | |
| KENNETH P. McCORMICK, and LT. | : | |
| PAUL SCHUSTER | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KATHARINE S. HAYDEN, U.S.D.J.**

## I.    INTRODUCTION

*Pro se* plaintiff Ma'Deq D. Yazid-Mazin ("Yazid-Mazin" or "plaintiff"), currently

confined at East Jersey State Prison in Rahway, New Jersey, has sued the following defendants,

all in their individual capacities,  pursuant to 42 U.S.C. § 1983: William F. Lamb, Nicole A. Roa,

Manuel B. Sameiro, and Simon L. Rosenbach, (all of whom plaintiff claims are with various

prosecutor's offices);  J. Michael Wicke, Esq.,  Public Defender's Office; and James Benanti,

Patrolman with the North Brunswick Police Department; Sgt. Kenneth P. McCormick of the

North Brunswick Police Department;  and Lt. Paul Schuster of the New Brunswick Police

Department.  Plaintiff's complaint alleges false arrest, false imprisonment, malicious

1

prosecution, and retaliation/vindictive enforcement by the police.

Most of the named defendants have been dismissed, because on June 7, 2004, in a written decision, this Court granted plaintiff *in forma pauperis* status and dismissed the claims of false arrest, false imprisonment and malicious prosecution.  The decision permitted the plaintiff's claim of retaliation/vindictive enforcement by the police in violation of his First Amendment rights to proceed, and the remaining defendants are Patrolman James Benanti, Sgt. Kenneth P. McCormick and Lt. Paul Schuster.

The plaintiff seeks injunctive relief "to allow plaintiff to exercise his rights and cease annoyance, oppressive-malice intentional misconduct" against him; declaratory relief "that the cabal officials have violated rights"; compensatory damages "for the undue prejudice and invidiousness to actually harm the plaintiff and cause to be away from workforce & family – lost wages, etc.";  and punitive damages "for the malicious, selective, and vindictiveness in false arrest, prosecution of criminal case based on racial animus in their individual and collective capacity to cause irreparable or invaluable time for ill will to punish for callous disregard of the plaintiff's civil and constitutional rights."  (Complaint ¶ 9.)

Presently before the Court are a summary judgment motion by Sgt. Kenneth P. McCormick (hereafter, "McCormick"); a summary judgment motion by Lt. Paul Schuster (hereafter, "Schuster"); a summary judgment motion by Patrolman James Benanti (hereafter, "Benanti"); and a separate summary judgment motion by Benanti on the punitive damages claim.

## II.    JURISDICTION

Plaintiff asserts jurisdiction under 23 different statutes as well as "ch. 40." (Complaint ¶ 1.)  However, since plaintiff is proceeding *pro se*, the Court will "apply the applicable law,

irrespective of whether [the] *pro se* litigant has mentioned it by name," Holley v. Dep't of

Veteran Affairs, 165 F.3d 244, 248 (3d Cir. 1999). Since plaintiff has brought his claim under 42

U.S.C. § 1983,  the Court has jurisdiction pursuant to 28 U.S.C. § 1343.

## III.   BACKGROUND

The pertinent portion of plaintiff's allegations relate to the remaining claims.   The Court

construes the plaintiff's pleadings liberally, since he is proceeding *pro se*.   Haines v. Kerner, 404

U.S. 519, 520 (1972). Because plaintiff's submissions are difficult to comprehend, the Court will

supplement the background recitation with facts gleaned from the submissions of the defendants,

where those facts will not prejudice plaintiff nor give credence to the movant's version of the

specific events in dispute.   Plaintiff begins his statement of claims with a recitation of  "the last 5

to 20 years [sic] history of this present litigation," beginning with two civil rights lawsuits for

police brutality that he filed in August 1984 and February 1985 against "Middlesex County

officials." (Complaint ¶ 8.)  His specific allegations begin with his 1987 arrest and subsequent

conviction for possession of heroin with intent to distribute within 1000 feet from school

property.   That conviction was reversed by the New Jersey Supreme Court on July 10th, 2001 for

deficiencies in the no-knock component of the application for the search warrant.[1]   Plaintiff

claims that defendants McCormick, Benanti, and Schuster were the officers who arrested him in

that case, and that the reversal caused the defendants to retaliate against him.  (Id.)  He claims

that defendant Benanti "made mention" of that reversal to defendant McCormick when plaintiff

---

[1] The Court held that "[t]he no-knock component of the warrant application was . . .
deficient" because the detective did not expressly articulate the basis for his suspicion that
evidence would otherwise be destroyed.  State v. Johnson, 168 N.J. 608, 621 (2001).

was arrested on December 8, 2001 for unlawful possession of a handgun and hindering

apprehension.  (Id.; Moving Brief at 7.)

The events on that day of his arrest are alleged as follows.  After plaintiff was released

from prison on the reversed drug conviction, he began staying at the residence of his step-father,

Johnny Holloway, Sr., in North Brunswick.. (Complaint ¶ 8.)  On December 8, 2001,  the police

arrived at that home to execute two arrest warrants against Johnny Holloway, Jr., plaintiff's half-

brother.  (Complaint ¶ 8; Moving Brief at 9-10.)  At the time of Holloway, Jr.'s arrest, plaintiff

was on the telephone in the dining room in his underwear.  (Complaint ¶ 8.)  Plaintiff claims that

the police began to search the house, and he asked them what they were looking for.  (Id.)  He

states that as soon as he questioned the officers, they pointed their guns at him.  (Id.)  Plaintiff

claims that he demanded to see a search warrant, and McCormick said, "leave are [sic] we will

deal with you again André."  (Id.)   Plaintiff states that he informed McCormick that his name

was now "Ma'deq," and reportedly, McCormick replied, "Oh, so when did you get home, André,

and I see, so you're using your Muslim [name]. Welcome home, André."  (Id.)

Plaintiff's submissions contain various versions of what happened next.  In one version,

plaintiff claims that he was detained by the officers while McCormick searched a bag that was

located near the plaintiff's belongings.  (Id.)   In this version, plaintiff was arrested after

McCormick found a loaded gun in the bag.  (Id.)  In another version of those events, also found

in the complaint,  plaintiff claims that McCormick told him he could leave the premises after

Holloway, Jr. was arrested, but as he tried to leave, "a bias [sic] James Benanti says [sic] to the

sergeant, 'I want him – since he beat the drug charges sergeant.'" (Id.)    Plaintiff claims that

McCormick arrested him solely based on Benanti's "personal vendetta" against him, and that this

arrest was done "to oppress plaintiff once again with vindictiveness, and bias, malicious actions or motive." (Id.)

Plaintiff's only allegation against Schuster of the New Brunswick Police Department  is that he "showed up on the witness stand to proffer perjury [sic] testimony as a state witness in his individual capacity." (Id.)  Apparently, Schuster had arrested the plaintiff in 1981, and was called to identify the plaintiff at the trial pursuant to the 2001 arrest.

## IV.      SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   A material fact is a fact  "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All facts will be viewed in the light most favorable to the non-movant, id. at 256, and all inferences drawn from the facts will be viewed in the light most favorable to the non-movant, Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## V.       DISCUSSION

The defendants have filed a joint brief in support of their individual motions for summary judgment, with the exception of the summary judgment motion on behalf of defendant Benanti regarding punitive damages, which was filed with a separate brief.

A.     **Summary Judgment Motion by Defendants McCormick, Schuster, and Benanti**

Defendants' grounds for dismissal are that plaintiff has failed to provide a sufficient factual basis for his claim of retaliation;  (Moving Brief at 34-39, 41-42); they are entitled to qualified immunity (Id. at 44-48); and the doctrine of *res judicata* prevents re-litigation of the same controversy between the parties (Id. at 49-51.).

On the sufficiency of plaintiff's proofs, defendants argue that plaintiff was arrested because he unlawfully possessed a gun, not because of anything stemming from his earlier, reversed conviction.  (Id.)  They claim that Benanti was not involved in the conversation between McCormick and the plaintiff, or in the events leading to the discovery of the gun in a bag that the plaintiff was carrying, belying plaintiff's claim that the defendants were collectively participating in a vendetta against him.  (Id. at 36.)  The defendants also claim that Schuster was not present for the December 8, 2001 arrest of plaintiff, removing any support for the allegation that Schuster retaliated against plaintiff by participating in that arrest.  (Id. at 37.)   In addition, defendants argue that Schuster only testified at plaintiff's trial to identify him as a convicted felon not permitted to possess a weapon.  (Id. at 37-38.)  They argue that plaintiff has not identified which aspect of Schuster's testimony that was false, misleading, or inaccurate.  (Id. at 38-39.) Defendants also note that the plaintiff was convicted of the offenses for which he was arrested, and the conviction was upheld by the appellate division, disproving plaintiff's claim that the arrest was fabricated based on the defendants' desire to retaliate against him.  (Id. at 39.)

Second, defendants argue that they are entitled to qualified immunity based on their positions as public officials, and on their "objectively reasonable" acts.  (Id. at 44.)  They argue

6

that plaintiff has not met his burden of setting forth specific facts to overcome defendants'

qualified immunity defense.  (Id. at 46.)  Defendants also point to the guilty verdicts and the

denial of plaintiff's motion to suppress the evidence against him as further evidence that they are

entitled to qualified immunity.  (Id. at 48.)

Third, defendants argue since plaintiff made the same claims of retaliation and vindictive

enforcement in the criminal trial, and was subsequently convicted, *res judicata* prevents re-

litigation of this controversy between the plaintiff and defendants McCormick and Benanti.  (Id.

at 49.)  They also argue that since plaintiff's motion to suppress the evidence was denied after

plaintiff made these same claims in support of that motion, probable cause existed for the actions

of McCormick and Benanti, and such probable cause proves that the charges were not brought

against plaintiff in retaliation.  (Id. at 49-50.)

In opposition, plaintiff claims that summary judgment is premature, "since plaintiff was

brought back to challenge original illegality of search."  (Opposition Papers at 5.)  It appears that

plaintiff is referring to his appeal of the court's denial of his motion to suppress the evidence

found in the Holloway home, but plaintiff does not explain why that appeal in a criminal case

should affect this Court's consideration of these summary judgment motions.

**Retaliation/Vindictive Enforcement**.

Plaintiff claims the defendants violated his First Amendment rights by arresting him in

retaliation for the earlier reversed conviction against him. He has alternately called the

defendants' actions in this regard "vindictive enforcement."  For simplicity's sake, the Court will

refer to plaintiff's claim simply as a claim for "retaliation."

In order to prevail on a retaliation claim, plaintiff must show the following: "first, that he

engaged in protected activity; second, that the Government or Police Department responded with retaliation; and third that his protected activity was the cause of the Government's retaliation." Anderson v. Davila,  125 F.3d 148, 161 (3d Cir. 1997).  Plaintiff's claims are based on the position that these defendants sought to retaliate against him for the two civil rights lawsuits for police brutality that he filed in August 1984 and February 1985 and for the appeal that he filed that led to the July 2001 reversal of his conviction for possession of heroin with intent to distribute.

Turning to the first prong of the retaliation test, the filing of the two civil rights lawsuits and the filing of the appeal that led to the reversal of plaintiff's conviction are protected activities under the First Amendment.  "The Supreme Court has consistently held that an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances."  Anderson v. Davila,  125 F.3d at 161.

However, the second and third prongs of the retaliation test are somewhat more problematic – is there evidence sufficient to survive summary judgment that these defendants retaliated against the plaintiff, and that the retaliation was because of those lawsuits and the successful appeal?  Clearly, the "institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983."  Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 907-908 (3d Cir. 1984).  However, neither the retaliation nor the causal connection required by the retaliation test is as clear.

The Court is mindful that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,  477 U.S. at 249.

Nevertheless, in order to proceed to trial in the face of a summary judgment motion, there must be "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968). Against this backdrop, the Court will consider plaintiff's allegations against each defendant in turn and consider whether there are factual disputes that require trial.

**McCormick**

In his complaint, plaintiff alleges that all three defendants, including McCormick, were involved in the 1997 drug bust that led to his conviction that was later overturned. (Complaint ¶ 8.) However, in his answers to interrogatories, plaintiff admits that the only defendant involved in that earlier bust was Benanti. (Plaintiff's Answers to Benanti's Interrogatories ¶ 20.) Mindful that plaintiff's theory of the alleged retaliation by McCormick is that it stemmed from that overturned conviction, it is significant that McCormick was not involved in the drug bust. In fact, in his deposition testimony, when asked what McCormick did wrong, plaintiff stated, "in retrospect he didn't do nothing wrong because he was letting me go." (Yazid-Mazin Deposition 164:9-164:12, May 25, 2005.)

In his complaint, plaintiff states that McCormick placed the plaintiff under arrest at the Holloway home in 2001 solely for retaliation. (Complaint ¶ 8.) However, in an interrogatory answer, plaintiff claims that McCormick told the plaintiff to leave the premises, at which point Benanti, not McCormick, "made false arrest." (Plaintiff's Answers to Benanti's Interrogatories ¶ 20.) Defendants claim that both McCormick and Benanti effected the arrest, and argue against plaintiff's theory of retaliation by pointing out that they were at the Holloway home to arrest

Johnny Holloway, Jr.,  not the plaintiff, and that the plaintiff was only arrested because he was in

the possession of a loaded gun. (Moving Brief at 34.)  A jury later convicted plaintiff of unlawful

possession of a weapon stemming from this arrest.

Other than the above allegations from the complaint, which are completely

unsubstantiated,  plaintiff's submissions do not set forth any specific actions by McCormick that

can be called retaliatory, nor does he make any causal connection between any alleged action by

McCormick and plaintiff's protected activities.  Under these circumstances, the Court does not

find that there is sufficient evidence to support plaintiff's claim against McCormick to require a

judge or jury to resolve the dispute, and McCormick's motion for summary judgment is granted**.**

**Schuster**

Plaintiff alleges Schuster "showed up on the witness stand to proffer perjury [sic]

testimony as a state witness in his individual capacity."  (Complaint ¶ 8.)  In his answers to

Schuster's interrogatories, plaintiff stated that Schuster was "compelled to testify concerning a

matter that James Benanti wrote, which was reversed by the New Jersey State Supreme Court on

July 20th, 2001," referring to plaintiff's 1997 drug bust. (Plaintiff's Answers to Schuster's

Interrogatories ¶ 1.)  When asked in Interrogatories to set forth "each and every act or conduct

allegedly committed by Paul Schuster" that caused injury or damage, the only part of plaintiff's

reply that has to do with Schuster's actions is, "[h]is testimony sealed my fate for imprisonment."

(Id. ¶ 6.)

Plaintiff has admitted that Schuster was not involved in his arrest at the Holloway home

in December, 2001.  (Yazid-Mazin Deposition 201:18-19, May 25, 2005; Moving Brief at 37.)

When asked to set forth the facts that support his allegations against Schuster, plaintiff

10

responded, "[t]he record and/or transcripts speak for the asserted violations."  (Plaintiff's

Answers to Schuster's Interrogatories, ¶ 4.)  However,  the transcript of Schuster's testimony

shows that Schuster merely identified the plaintiff and stated that he had arrested plaintiff in 1981

for possession of controlled dangerous substances with intent to distribute.  (Transcript of Trial

Proceedings at 59-63, State of New Jersey v. Andre Johnson, No. 1925-02-T4-KAK, July 25,

2002.)  Schuster was not asked about, nor did he mention plaintiff's 1997 drug bust nor the

reversal of the conviction on that charge.  (Id.)

        Plaintiff does not dispute any of Schuster's testimony.  He has not supplied any evidence

of retaliation on the part of Schuster, nor has he substantiated his claim that Schuster was

compelled to testify.  The Court does not find any issue of material fact concerning plaintiff's

claims against Schuster that would require resolution by a judge or jury.  Therefore, Schuster's

motion for summary judgment is granted**.**

**Benanti**

        As evidence of Benanti's desire to retaliate against him, plaintiff claims that after

Holloway, Jr. was arrested, McCormick told plaintiff to leave the house, and then decided instead

to arrest him on a gun charge after Benanti said to McCormick, "I want him – since he beat the

drug charges sergeant."  (Complaint ¶ 8.)  But in his answers to Benanti's interrogatories,

plaintiff avers Benanti said to McCormick:   "I want him Sgt., for beating the drug case, and I'm

goin' to send him back to jail, put your hands behind your back, your [sic] under arrest again."

(Plaintiff's Answers to Benanti's Interrogatories ¶ 19.)  Although plaintiff claims that Benanti

made these statements in front of numerous witnesses, including members of plaintiff's family,

he has not adduced any support for his version of events from any of the alleged witnesses.  (Id.)

Defendants claim that Benanti was not involved in the events leading up to McCormick's

discovery of the gun, and argue that plaintiff has not set forth "an ounce of evidence supporting

the claims asserted against Patrolman Benanti other than mere speculation and conjecture."

(Moving Brief at 36.)

While plaintiff's unsubstantiated allegations might be sufficient to survive a motion to

dismiss,  they are not sufficient to survive a motion for summary judgment.  "[A] party cannot

rest on the allegations contained in his complaint in opposition to a properly supported summary

judgment motion made against him."  First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. at

289.  The plaintiff has not presented this Court with any evidence that supports the allegations in

his complaint against Benanti.  Although a summary judgment motion can be defeated by "[a]ny

credible evidence contrary to the moving party's version of events," the plaintiff has supplied *no*

evidence to support the allegations in his complaint against Benanti.  Therefore, Benanti's

motion for summary judgment is granted**.**

Since the Court has granted the above summary judgment motions for the reasons here

stated, the Court will not consider defendants' alternative arguments of qualified immunity and

*res judicata*.

**B.      Summary Judgment Motion on Punitive Damages by Defendant Benanti**

Defendant Benanti separately moves for summary judgment with respect to plaintiff's

punitive damages claim.  Because Benanti's motion for summary judgment is granted (document

#34), this motion is moot.

**VI.    CONCLUSION**

Based on the foregoing, defendant McCormick's motion for summary judgment

(document #31) is **granted**;  Schuster's motion for summary judgment (document #33) is

**granted**;  Benanti's motion for summary judgment (document #34) is **granted**; and Benanti's

motion for summary judgment on punitive damages alone (document #32) is **dismissed as moot.**


**Dated:** May 2, 2006


/s/ Katharine S. Hayden
**Katharine S. Hayden**
**United States District Judge**